IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| In re: <br><br> **JB BOOKSELLERS, INC., a Kentucky Corporation,** *et al.*,[1] <br><br><br> Debtors. | Chapter 11 <br><br> Case No. 10-53593 (TNW) <br><br> Jointly Administered <br><br> **Hearing Date:** May 12, 2011 at 10:00 a.m. (Prevailing Eastern Time) |

### MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ENTRY OF AN ORDER PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019 AUTHORIZING AND APPROVING SETTLEMENT AGREEMENT

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 bankruptcy cases of the above-captioned debtors and debtors-in-possession (the "Debtors"), by and through its undersigned co-counsel, hereby moves (the "Motion") this Court for entry of an order authorizing and approving that certain settlement (the "Ingram Settlement") reached by and between the Committee and Ingram Book Group Inc. (collectively with its affiliates and subsidiaries and General Benton Smith Inc., "Ingram") and authorizing the Committee and Ingram to enter into the Settlement Agreement annexed hereto as Exhibit A memorializing the Ingram Settlement pursuant to Federal Rule of Bankruptcy Procedure 9019. In support of this Motion, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1.  The Committee believes the Ingram Settlement represents the best possible resolution of the Committee's and the estates' various potential claims and causes of action

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's federal tax identification number are (i) JB Booksellers, Inc. (5130), (ii) Joseph-Beth Booksellers, LLC (6343), and (iii) Joseph-Beth Café, LLC (5705). The Debtors' corporate headquarters address is 1727 Riverside Drive, Cincinnati, OH 45202.

against Ingram and provides the funding for a plan of liquidation that will provide a distribution to holders of allowed unsecured claims. The Ingram Settlement not only avoids the delay, costs, and uncertainty of protracted litigation (and thereby expedites the conclusion of these chapter 11 cases), but also assures that the Debtors' estates will be administratively solvent, assures an exit strategy through a plan process, and facilitates a meaningful dividend to the Debtors' unsecured creditors. Accordingly, the Committee respectfully requests that the Court approve the Ingram Settlement and authorize the Committee and Ingram to enter into the Settlement Agreement.

## JURISDICTION AND VENUE

2. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory basis for the relief requested herein is Bankruptcy Rule 9019.

## BACKGROUND

3. The Debtors each commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on November 11, 2010. Five months later, the Debtors' chapter 11 cases are now drawing to a close. At an auction held April 20, 2011, the Debtors sold substantially all of their assets in two parcels, with one buyer purchasing three stores as a going concern, and a liquidator group conducting going-out-of-business sales at the Debtors' other two stores (collectively the "Sale"). The Debtors will seek approval of the Sale at a hearing on April 27, 2011.

4. The prepetition relationship between the Debtors and Ingram has been a subject of substantial controversy during the course of the Debtors' chapter 11 bankruptcy cases. Following an extensive review of the relationships and transactions between Ingram and the

Debtors, the Committee concluded that the Debtors' estates and the Committee have various claims and causes of action against Ingram, including claims to avoid fraudulent conveyances and preferential transfers, claims for breach of fiduciary duties, and other causes of action (collectively, the "Potential Claims"). Ingram disputes the Committee's position and believes that it holds valid defenses to all of these claims.

5. Although the Committee's professionals drafted and were prepared to file an adversary complaint against Ingram asserting the Potential Claims if discussions regarding a consensual settlement stalled, the parties ultimately agreed to the terms set forth in the Settlement Agreement that would resolve all of the Potential Claims and any alleged defenses or counterclaims thereto.

6. Through extensive negotiations, to avoid the administrative expense, uncertainty, and delay of litigation, the Committee and Ingram have entered into the Settlement Agreement. The pertinent terms of the Settlement Agreement are as follows:[2]

    a. Ingram will pay $2,500,000 in cash to the Debtors' estates to fund a chapter 11 plan of liquidation;

    b. Ingram will pay $330,000 to the Debtors' estates to pay allowed claims asserted by holders of the Debtors' gift cards and gift certificates (with any excess reverting to the estates);

    c. Ingram will fund any deficiency owed to the Debtors' prepetition secured lender, Webster Business Credit Corporation ("Webster");

    d. Ingram will fund all postpetition operating liabilities of the Debtors allowable under section 503(b) of the Bankruptcy Code, other than claims allowed pursuant to section 503(b)(9) and allowed fees and expenses of estate professionals, to the extent not paid out of Sale proceeds or Webster's cash collateral;

    e. Ingram will waive its claim or right to a distribution based on any asserted prepetition claims against the Debtors' estates;

---

[2] This is a summary of the key terms of the Settlement Agreement. All persons are urged to read the entire Settlement Agreement, which is annexed hereto as Exhibit A.

-3-

    f. Ingram will forbear from filing or otherwise asserting any other claims in these cases; and

    g. in exchange, Ingram and its officers, directors, shareholders, and employees will receive a general release from the Committee and the Debtors' estates of any Potential Claims.

## RELIEF REQUESTED

7. By this Motion, the Committee seeks entry of an order pursuant to Bankruptcy Rule 9019(a), substantially in the form annexed hereto as Exhibit B (the "Settlement Order"), approving the Ingram Settlement and authorizing Ingram and the Committee to execute the Settlement Agreement.

## BASIS FOR RELIEF REQUESTED

8. Bankruptcy Rule 9019(a) provides that, "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order . . . necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

9. Courts encourage the consensual settlement of potentially time-consuming and burdensome litigation, especially in the bankruptcy context. See In re Penn Cent. Transp. Co., 596 F.2d 1127, 1146 (3d Cir. 1979); In re World Health Alternatives, Inc., 344 B.R. 291, 296 (Bankr. D. Del. 2006) (settlement of time-consuming and burdensome litigation, especially in the bankruptcy context, is encouraged and "generally favored in bankruptcy"); In re Sassalos, 160 B.R. 646, 653 (D. Or. 1993) ("compromises are favored in bankruptcy, and the decision of the bankruptcy judge to approve or disapprove a compromise . . . rests in the sound discretion of the judge"); see also In re Protective Comm. for Indep. Stockholders of TMT Ferry, Inc. v. Anderson, 390 U.S. 414 (1968) ("[I]n administering a reorganization proceeding in an

-4-

economical and practical manner, it will often be wise to arrange the settlement of claims in which there are substantial and reasonable doubts.").

10. Approval of a proposed settlement is within the "sound discretion" of the Bankruptcy Court. See In re Midway Motor Sales, Inc., 2009 Bankr. LEXIS 1696, *26 (6th Cir. B.A.P. 2009); In re Anderson, 377 B.R. 865, 868 (6th Cir. B.A.P. 2007); In re Neshaminy Office Building Associates, 62 B.R. 798, 803 (Bankr. E.D. Pa. 1986). A Bankruptcy Court reviewing a proposed settlement must apprise itself of "all necessary facts so as to make an informed and independent judgment as to whether the settlement is fair and equitable to the nonsettling parties." Midway Motor Sales, 2009 Bankr. LEXIS at *26; see also Myers v. Martin (In re Martin), 91 F.3d 389, 394 (3d Cir. 1996).

11. In deciding whether to approve a settlement such as the Ingram Settlement, courts "compare the terms of the compromise with the likely rewards of litigation." See TMT Ferry, 390 U.S. at 424-25; see also Midway Motor Sales, 2009 Bankr. LEXIS at *26. Courts undertaking this analysis assess "'the probabilities of ultimate success should the claim be litigated,' and the costs attendant with such litigation in terms of complexity, expense, inconvenience, delay, and the likely duration of a lawsuit, including the possible difficulties of collecting on any judgment." Midway Motor Sales, 2009 Bankr. LEXIS at *26 (quoting TMT Ferry, 390 U.S. at 424-25). This review is not a "mini-trial" on the merits of the claims underlying the proposed settlement, but rather requires the proponent of a settlement agreement to demonstrate by a preponderance of the evidence that the settlement is fair and equitable to nonsettling parties. Midway Motor Sales, 2009 Bankr. LEXIS at *26.

12. Although litigating the Potential Claims *might* result in a judgment in favor of the Debtors' estates with a value greater than that conveyed by the Ingram Settlement, reaching that

result—which is not guaranteed—would involve substantial costs, delay the receipt of any recovery by unsecured creditors, and inject uncertainty into the outcome of the Debtors' bankruptcy cases. It could also result in the conversion of the Debtors' cases to cases under chapter 7 of the Bankruptcy Code. Obtaining standing to bring certain of the Potential Claims would require motion practice by the Committee, adding additional costs and delay. Avoiding these risks is precisely the reason courts approve consensual settlements of potential litigation in bankruptcy cases. See TMT Ferry, 390 U.S. at 425.

13.  On the other hand, the Ingram Settlement provides creditors with finality and enables the expeditious conclusion of the Debtors' bankruptcy cases, with creditors receiving a final payout in a matter of months instead of years. The Ingram Settlement is a compromise that will provide a meaningful recovery to the Debtors' unsecured creditors and ensure the administrative solvency of the Debtors' estates through the consummation of a chapter 11 plan of liquidation. Accordingly, the Ingram Settlement is fair and equitable to all parties-in-interest in the Debtors' bankruptcy cases, including non-settling parties, and the Court should approve the Ingram Settlement and authorize the execution of the Settlement Agreement.

**WHEREFORE**, the Committee respectfully requests that the Court enter an order, substantially in the form annexed hereto as Exhibit B, approving the Ingram Settlement, authorizing the Committee and Ingram to execute the Settlement Agreement, and granting such other relief as the Court may deem just and proper.

## **NOTICE**

Notice is hereby given that the foregoing motion will be heard by the Court on May 12, 2011 at 10:00 a.m. (ET) or as soon thereafter as counsel may be heard in the United States Bankruptcy Court, Third Floor Courtroom, 100 East Vine Street, Lexington, Kentucky 40507.

Dated: April 26, 2011
        Lexington, Kentucky

           Respectfully Submitted,

           **FROST BROWN TODD LLC**
           By:     */s/ Adam R. Kegley*
           Adam R. Kegley, Esq.
           Ellen M. Sharp, Esq.
           Lexington Financial Center
           250 West Main Street
           Lexington, Kentucky 40507
           Telephone: 859.231.0000
           Facsimile: 859.231.0011
           E-mail: akegley@fbtlaw.com

           -and-

           **LOWENSTEIN SANDLER PC**
           Bruce Buechler, Esq.
           Bruce Nathan, Esq.
           Andrew Behlmann, Esq.
           65 Livingston Avenue
           Roseland, NJ 07068
           Telephone: (973) 597-2500
           Facsimile: (973) 597-2400

           *Co-Counsel to the Committee*

## **CERTIFICATE OF SERVICE**

      This is to certify that a true and correct copy of the foregoing was served on April 26, 2011 to all parties served by the Court via CM/ECF noticing.

           /s/ Adam R. Kegley